IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PRODUCTS INTERNATIONAL COMPANY,<br><br>Debtor. | Chapter 11<br><br>Case No. 08-1454<br><br>MEMORANDUM DECISION ON DEBTOR'S MOTION TO DISMISS AND CREDITOR'S REQUEST FOR APPOINTMENT OF A TRUSTEE |

I. INTRODUCTION

This matter comes before the Court on a Motion to Dismiss ("Motion") filed with the Court on July 11, 2008 by Products International Company (the "Debtor"). A Response to the Motion to Dismiss and Motion for Appointment of Chapter 11 Trustee ("Cross Motion") was filed on August 12, 2008 by Michael Ferring ("Ferring"), a creditor herein. The Debtor filed a Reply on August 15, 2008.

After conducting a hearing on the matter on August 19, 2008,[1] taking into consideration the arguments of each of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

---

**1.** Pursuant to 11 U.S.C. § 1112(b)(3) the Court must render a decision on the matter no later than 15 days after the August 19, 2008 hearing date.

1

## II. FACTUAL BACKGROUND

The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2008.[2] The Debtor is in the business of manufacturing and selling identification bands used in the medical field. The Debtor has 10 employees. The Debtor has been owned, and family-operated, by the Twentier family since 1962. Carl and Patricia Twentier own two thirds of the shares of the Debtor, and Mr. Ferring owns the remaining one-third interest. Mr. Carl Twentier is the president of the Debtor, and since 1993, his duties have included managing all aspects of business, including its daily operations.

Mr. Twentier and his wife also own another company, MaxArt Animal Health Inc. ("MaxArt"). MaxArt is a related company to the Debtor, given the common ownership, but it is neither a parent nor a subsidiary of the Debtor. Mr. Twentier is the president and chief executive officer of MaxArt. Mr. Twentier admitted he transferred nearly $700,000 of Debtor funds to MaxArt over a period of time. Mr. Twentier also admitted improperly transferring $120,000 of Debtor funds to himself and his wife.[3]

The Internal Revenue Service ("IRS") is the Debtor's largest creditor. The Debtor failed to pay employee withholding taxes, as well as corporate taxes, and as a result the IRS instituted a pre-petition levy against the Debtor's accounts receivables and bank accounts. The IRS has asserted a claim against the Debtor in the amount of $508,212.40, of which $420,777.61 is asserted as a secured claim. The Debtor asserted, in its Motion to Dismiss, that it had entered into discussions with the IRS as to how to repay the obligation outside of the bankruptcy proceedings.

---

**2.** Given the filing date of the Debtor's petition, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat 23 (2005) ("BAPCPA") is applicable to this case.

**3.** At the hearing on the Motions, counsel for the Debtor believed that the $120,000 was some type of salary or compensation to the Twentiers.

2

The Debtor's revenue for the ten months ending July 31, 2007 was approximately $1,440,000, with a gross profit of approximately $886,000, and a net income of approximately $261,000. Additionally the amount of the Debtor's accounts payable, on October 10, 2007, was approximately $177,000.

The Debtor's revenue for the ten months ending July 31, 2008 was approximately $1,390,000, with a gross profit of approximately $818,000, and a net income of approximately $320,000. For the ten months ending July 31, 2008, the Debtor generated approximately $205,000 in cash flow from operating activities. Since filing its bankruptcy petition, the Debtor has generated approximately $59,000 in cash flow from its operating activities. The Debtor's accounts payable on August 7, 2008 was approximately $180,000.

At a prior hearing on July 15, 2008, the Debtor presented evidence that its current facilities were inadequate for its current operations, resulting in the plastic utilized by the Debtor for the making of the identification bands being left outside on pallets.[4] The Debtor obtained separate space nearby, on a month-to-month basis, to store the pallets. The Debtor did not seek prior Court authority to enter into the month-to-month tenancy. The July 15 hearing did consider to what extent the Debtor should be permitted to enter into a lease agreement for the facility that the Debtor was using on a temporary basis. Because the request for the lease agreement on the additional space was out of the ordinary course of the Debtor's business, counsel for the Debtor had requested the aforesaid hearing on an accelerated basis. The Debtor also filed a separate motion to purchase manufacturing equipment for its operations, which was also scheduled for hearing on July 15, 2008. Ferring opposed the Debtor's request to enter into the lease agreement and to purchase the new equipment. The Court concluded that although the hearing concerning the lease and the equipment was set on an accelerated basis, and evidence was taken at that hearing on short notice, Mr. Twentier displayed a superior knowledge of the Debtor's business

---

**4.** Mr. Twentier testified that the extreme heat of the Phoenix, Arizona summers was destroying the plastic; hence, he needed to obtain an alternative place to store the materials.

3

and how it should be operated. Ferring had not been associated with the Debtor's business for over a year and did not persuade the Court of his business acumen. Ultimately the hearing had to be continued, but the Debtor was allowed to store its materials at the temporary location pending the outcome of a further hearing on the matter. The Debtor's request to purchase manufacturing equipment was also continued to another day.

At the August 19, 2008 hearing on the Debtor's Motion to Dismiss and Ferring's Cross Motion, no witnesses were called. The Debtor's owner, Mr. Twentier filed a Declaration with the Court.[5] Ferring presented a number of exhibits attached to its Cross Motion. As noted previously, the Court also conducted a separate evidentiary hearing on the Debtor's request to enter into a lease agreement and its request to purchase new equipment.

The Debtor argued that it was a profitable business, as shown by its recent financial results, that it could pay its creditors outside of the bankruptcy proceedings, and that remaining in a Chapter 11 proceeding was very expensive, since the Debtor was incurring substantial attorneys' fees and costs as an additional administrative expense. For instance, the Debtor's counsel noted that Ferring had filed any number of pleadings opposing the Debtor's requested relief, which actions were increasing exponentially the Debtor's attorneys' fees and costs. However, the Debtor's counsel admitted that Mr. Twentier had engaged in the improper transfer of $700,000 from the Debtor to MaxArt, and that Mr. Twentier and his wife had also improperly removed $120,000 from the Debtor. The Debtor's counsel suggested that these funds could be recovered by a fraudulent conveyance action in state court.

Conversely, Ferring's counsel argued, at the August 19 hearing, that the Debtor should remain in a Chapter 11 and that a trustee should be appointed. Ferring wanted to obtain control of the Debtor, by proposing his own plan of reorganization, which would extinguish the Twentiers' ownership interests. Apparently Ferring would then be in a position to operate the Debtor as he saw fit.

---

**5.** *See* Carl Twentier Declaration, Docket Entry No. 82.

4

The Court concluded, at the close of the hearing on the Motion and Cross Motion, that Mr. Twentier and Ferring were in a classic owner's dispute. Given Ferring's minority interest in the Debtor, however, Mr. Twentier had the final determination as to how the Debtor should be operated. Mr. Twentier and Ferring seemed to disagree fundamentally on every aspect of the Debtor's operations: to wit, whether the Debtor needed to expand to new space; whether the Debtor needed to purchase new equipment; whether Ferring had the requisite experience to be the chief executive officer of the Debtor; and how the Debtor should proceed to market effectively, and expand its market as to the sale of, its product.

## III. DISCUSSION

The Debtor seeks dismissal of this Chapter 11 case pursuant to 11 U.S.C. § 1112(b). The Debtor argues that cause exists for dismissal under Section 1112 (b)(4)(A) due to substantial or continuing loss or diminution of the estate. According to the Debtor, the reason it filed its bankruptcy petition was to resolve its federal tax liability. However, the Debtor alleges that it has now engaged in discussions with representatives from the IRS in order to address its tax claim. In this case, the Debtor contends that dismissal will enable it to resolve the IRS claim outside of bankruptcy, and will allow it to avoid the attorneys' fees and costs incurred with formulating and confirming a Chapter 11 plan. In addition, continuing in a Chapter 11 proceeding will require paying significant administrative fees and costs that would otherwise be utilized to satisfy the Debtor's obligations to all of its creditors.

The Debtor further postulates that under the guidance of 11 U.S.C. § 1112(b), after determining that cause exists for dismissal, the Court must engage in a "balancing test" to determine whether dismissal or conversion is appropriate based upon the "best interests of the creditors and estate." In re Nelson, 343 B.R. 671 (9th Cir. 2006). And that based upon that "balancing test," dismissal is the appropriate course of action for this Debtor.

For the reasons set forth hereinafter, the Court must determine whether "cause"

5

exists to take some action under Section 1112(b). Cause is a flexible standard, subject to the Court's discretion, and does not necessarily involve one or all of the those factors set forth in Section 1112(b)(4). Once cause has been established, the Court must then determine whether dismissal or conversion of the case, or the appointment of a Chapter 11 Trustee, is in the best interests of the creditors and the estate.

### A. DISMISSAL UNDER § 1112(b)

11 U.S.C.§ 1112(b) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 1112(b)(1) now provides:

> Except as provided in paragraph (2) of this subsection, subsection © of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." (Emphasis added). § 1112(b)(1).

Prior to the 2005 amendments, the statute provided, in part, that

> ...after notice and a hearing, the court *may* convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate for cause, including...(Emphasis added). § 1112(b)(1) (prior to BAPCPA).

Although the parties do not challenge the Debtor's ability to so move, the Court preliminarily notes that the Debtor does have the standing to bring a motion to dismiss, since it is a "party in interest." 11 U.S.C. § 1109(b). What is unusual is that the Debtor is bringing the Motion to Dismiss so shortly after it filed its Chapter 11 proceedings.

Next, the amendments incorporated into Section 1112(b), as a result of BAPCPA, also add an introductory qualifying phrase which carves out certain exceptions. If the language of the statute is clear on its face, the Court must enforce it as written. <u>United States v. Ron Pair Enter., Inc.</u>, 489 U.S. 235, 243, 109 S.Ct. 1026, 103 L.Ed. 2d 290 (1989); <u>Lamie v. United States Trustee</u>, 540 U.S. 526 (2004). However, if there is an ambiguity, the Court may consult legislative history or engage in an appropriate analysis to provide meaning to the provision that

6

Case 2:08-bk-01454-SSC    Doc 92    Filed 09/02/08    Entered 09/02/08 13:35:14    Desc
Main Document    Page 6 of 14

is consistent with the overall purpose of the statute. <u>Turner v. McMahon</u>, 830 F.2d 1003 (9th Cir. 1987). Although somewhat confusing in syntax, the case law and a commentator have concluded that the language "[e]xcept as provided in section 1104(a)(3)[6]" now requires the Court to consider three alternatives in its analysis under Section 1112(b)(1), as amended. If cause has been shown by the moving party, the Court must consider whether to dismiss the case, convert the case to one under Chapter 7, or appoint a Chapter 11 trustee, whichever result is in the best interest of creditors. <u>In re Gladys Marie Jayo,</u> 2006 WL 2433451, at 6 (Bankr. D.Idaho 2006); <u>In re Incredible Auto Sales LLC,</u> 2007 WL 1100276 (Bankr. D. Montana 2007), *citing* 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[3] (15th ed. rev.). Unfortunately, a party in interest opposing such relief is only allowed to show "unusual circumstances" specifically identified by the Court in its decision, or as outlined in Section 1112(b)(2), to prevent a dismissal or conversion of the case.[7] The Section is silent as to how a party in interest opposes the request that a Chapter 11 trustee be appointed. However, a review of Section 1104(a)(3), inserted as a result of BAPCPA, states that "if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors

---

**6.** Section 1104(a)(3) provides, as follows:
(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee–

>   (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

**7.** Section 1112(b)(2) provides another basis for "unusual circumstances" to be shown. The debtor, or another party in interest, must object and show that a plan of reorganization will be confirmed within the time constraints set forth for a small business, or otherwise within a reasonable period of time, and that if there has generally been an act or omission by the debtor, there exists reasonable justification for same and it shall be cured within a reasonable period of time. However, "if there is a substantial or continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," then the debtor or party in interest does not have access to the exception under Section 1112(b)(2).

7

and the estate," "the court shall order the appointment of a trustee." Thus, it appears that once cause has been shown, the Court, through a balancing test, determines which result is appropriate based upon the record.

As a part of its preliminary analysis, this Court also observes that prior to the enactment of BAPCPA, it had discretion in determining whether to dismiss or convert a case if cause had been shown. Now Section 1112(b), as amended, provides that once cause has been shown, the Court's discretion is limited. *See* In re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr.D.N.H.2007); In re Gateway Access Solutions, Inc., 374 B.R. 556 (Bankr. M.D. Pa. 2007).[8]

Other than Section 1112(b)(2), inserted by BAPCPA, Section 1112(b) does not define "unusual circumstances." However, the phrase contemplates conditions that are not common in chapter 11 cases. In re Fisher, 2008 WL 1775123 (Bankr.D.Mont. 2008). As explained in 7 Collier on Bankruptcy, ¶ 1112.04[3], p. 1112-26, 1112-27 (15thed.rev.):

> Although section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.

The Courts do have significant discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal. In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr.S.D.N.Y.2007) (stating that "[t]he statute explicitly provides for this discretion where a court is able to identify 'unusual circumstances ... that establish that the requested conversion is not or dismissal is not [sic] in the best interests of creditors and the estate' ").

Although the question of whether unusual circumstances have been shown is

---

**8.** Each case only focuses on whether the case should be dismissed or converted.

8

relevant as to whether the Court should dismiss or convert the case, the Court concludes that said exception does not apply to whether a Chapter 11 trustee should be appointed. The language "unusual circumstances" only modifies whether the case should be dismissed or converted.[9] Thus, the effect of Section 1112(b) is to permit the Court to appoint a Chapter 11 trustee perhaps more readily than to dismiss or convert the case.

### 1. CAUSE EXISTS PURSUANT TO § 1112(b)

Pursuant to § 1112(b)(1), the initial burden lies with the Movant to establish "cause" for conversion. *See* 11 U.S.C. § 1112(b)(1). A list of what constitutes "cause" is found in § 1112(b)(4). Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should "consider other factors as they arise, and use its equitable powers to reach the appropriate result in individual cases. In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368 (9th Cir. BAP 2000); In re Gateway Access Solutions, Inc. 347 BR 556 (Bankr. M.D. Pa 2007); In re 3 Ram, Inc., 343 B.R. 113 (Bankr. E.D. Pa. 2006). Moreover, courts have wide discretion in determining what constitutes such cause. *See* In re Johnston, 149 B.R. 158, 160 (9th Cir. BAP 1992); Matter of Nugelt, Inc., 142 B.R. 661, 665 (Bankr.D.Del. 1992).

However, BAPCPA has created an additional level of uncertainty by inserting the word "and," for the word "or," in the list of items that may constitute "cause."[10] It is impossible

---

**9.** Perhaps the language of unintended consequences, but the Section states "on request of a party in interest, and after notice and hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert . . . or dismiss . . ., whichever is in the best interests of creditors and the estate. . . ." 11 U.S.C. § 1112(b)(1).

**10.** Compare Section 1112(b), which stated that ". . .on request of a party in interest. . . .and after notice and a hearing, the court may convert . . .or may dismiss a case, whichever is in the best interest of creditors and the estate, for cause, including ---(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; . . ..or (10) nonpayment of any fees or charges required under chapter 123 of title 28 [28 U.S.C.§§ 1911 et seq.], with the current Section 1112(b)(4), which states that "the term "cause" includes—(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; . . .and (P) failure of the debtor to pay any domestic support

9

in this case, involving a debtor that is an entity, to have a domestic support obligation that remains unpaid. Moreover, certain provisions are contradictory. How is a debtor unable to confirm a plan within the time fixed by the Bankruptcy Code or court order, yet have a material default with respect to a confirmed plan or have a confirmed plan terminated by reason of an occurrence of a condition specified in the plan?[11] The use of the word "and" appears to be a scrivener's error, and to require each element under the Subsection would lead to an absurd result or, as noted, an impossibility. The Courts which have analyzed the Subsection have come to the conclusion that the list is not exclusive and that one or more elements reflecting "cause" may be shown, but a party in interest need not show all of the enumerated items under Section 1112(b)(4). In re Kane, 336 B.R. 477, 487 (Bankr. D. Nev. 2006); *also see* In re Gladys Marie Jayo, 2006 WL 2433451(Bankr. D. Idaho 2006); In re 3 Ram, Inc., 343 B.R. 113 (Bankr. E.D. Pa. 2006); In re TCR of Denver, LLC, 338 B.R. 494 (Bankr. D. Colo. 2006). This Court concludes that the items listed in Subsection (b)(4), under the term "cause," are not exclusive and shall read the list in the disjunctive, utilizing the term "or," rather than "and," in considering whether cause has been shown.

       The Debtor argues that cause exists for dismissal under Section 1112 (b)(4)(A) due to "substantial or continuing loss or diminution of the estate." However, the Debtor misquotes the enumerated cause under §1112(b)(4)(A). Section 1112(b)(4)(A) provides that the term "cause" includes: "substantial or continuing loss to or diminution of the estate <u>and</u> the absence of reasonable likelihood of rehabilitation." (Emphasis added). For a Chapter 11 case to be dismissed or converted, predicated on this item, there must be both (1) continuing loss or diminution, and (2) the absence of reasonable likelihood of rehabilitation. In re Original IFPC Shareholders, Inc.. 317 B.R. 738 (Bank.N.D.Ill. 2004); In re AdBrite Corp., 290 B.R. 209 (Bankr. S.D.N.Y 2003). That has not been shown by the Debtor herein.

---

obligation that first becomes payable after the date of the filing of the petition."

    **11.** Compare Section 1112(b)(4)(J) with (b)(4)(N) and (b)(4)(O).

10

According to the Debtor, its revenue for the ten months ending July 31, 2008 was approximately $1,390,000, with gross profit of approximately $818,000, and net income of approximately $320,000. For the ten months ending July 31, 2008, the Debtor generated approximately $205,000 in cash flow from its operating activities. Since filing its bankruptcy petition, the Debtor has generated approximately $59,000 in cash flow from its operating activities. The Debtor's accounts payable on August 7, 2008 was approximately $180,000.[12] These figures present a viable company, operating at a profit, with a reasonable likelihood of rehabilitation.

The Court, however, does have concerns with the Debtor's management. Section 1112 (b)(4)(B) provides that gross mismanagement of the estate is cause for dismissal, conversion, or other action by the Court. Failure to maintain an effective corporate management team has been held to constitute gross mismanagement. In re Gateway Access Solutions, Inc. 347 BR 556 (Bankr. M.D. Pa 2007); In re Broad Creek Edgewater L.P., 371 B.R. 752 (Bankr. D.S.C.2007). The evidence presented in this case demonstrate that the Debtor lacks a focused reorganization management team. Mr. Twentier and his wife own two thirds of the company, while Mr. Ferring owns the remaining one- third interest. It is clear from the evidence presented that the owners have an acrimonious relationship, and have differing opinions on how the Debtor should operate.

No doubt the sources of the tension are, in part, the various inappropriate pre-petition transactions in which Mr. Twentier engaged and the Debtor's failure to pay the accruing tax liabilities. For instance, Mr. Twentier improperly transferred nearly $700,000 to one of his companies, MaxArt. In addition, Mr. Twentier utilized the Debtor's funds to transfer, admittedly improperly by him, the sum of $120,000 to Mr. Twentier and his wife. These transfers are a clear example of the gross mismanagement of the Debtor. Under Mr. Twentier's

---

**12.** *See* Carl Twentier Declaration, Docket Entry No. 82.

11

leadership, the Debtor also has failed to pay employee and corporate taxes, resulting in an IRS claim in the amount of $508,212.40. A debtor-in-possession owes a fiduciary duty to its creditors. In this case, however, the evidence indicates that current management has been more interested in engaging in self-dealing transactions, to the detriment of the Debtor. Therefore, the Court concludes that based upon the evidence presented, cause does exist for dismissal, conversion, or the appointment of a trustee under Section 1112 (b).

### 2. THE COURT MUST DETERMINE WHAT IS IN THE BEST INTERESTS OF CREDITORS

Once "cause" has been established by the moving party, in this case the Debtor, the Court must then determine whether a Chapter 11 trustee should be appointed or the case should be dismissed or converted to one under Chapter 7. The Debtor here is a viable, financially successful business operation. Unlike many other chapter 11 debtors, this Debtor is not operating at a loss. None of the parties dispute these facts. However, the Debtor's owners, the Twentiers and Ferring, are engaged in a struggle for control of the Debtor. The parties are unable to come to a consensus on basic operational issues. For example, the parties are at odds on whether the Debtor should purchase new manufacturing equipment and enter into a new real estate lease. Ferring desires control of the Debtor, yet he has not shown the Court the requisite business experience and knowledge to manage this Debtor appropriately. The Twentiers and Ferring shall continue to battle for control of this Debtor for as long as the Court permits such action. As a result of this internecine warfare, the Court concludes that there is no one at the helm of the Debtor to navigate the Debtor successfully through its daily operations, the reorganization process, or the long-term decisions that must be made for the Debtor to remain financially viable in the future.

Mr. Twentier has engaged in improper pre-petition transfers to the detriment of the Debtor and this estate. Mr. Twentier has been unable to provide a reasonable explanation, or legitimate business reason, for the transfer of nearly $700,000 in the Debtor's funds to MaxArt.

12

Mr. Twentier and his wife also owe the Debtor $120,000 in funds transferred for their own personal use. The Twentiers have provided no concrete proposal as to how these funds are to be repaid to the Debtor. Moreover, these improper transactions are an egregious violation of the fiduciary duty Mr. Twentier owes the Debtor and its creditors. It is clear to the Court that Mr. Twentier has engaged in activities that are detrimental to the creditors and this estate, and he cannot continue in his current role.

Of course, there also remains the issue of the IRS tax liability. First, it was not paid, in a timely manner, while Mr. Twentier was managing the Debtor. Given the substantial nature of the obligation, it will also require the discipline of a seasoned manager to ensure that the obligation is repaid pursuant to a confirmed plan of reorganization.

Given these factors, the Court concludes that the appointment of a Chapter 11 trustee that is familiar with the Debtor's type of operations will permit the Debtor to get back on track, recover the improper pre-petition transfers obtained by the Twentiers, focus on a plan of reorganization that treats all creditors in an equitable manner, and even consider whether some type of auction of the Debtor's equity interests makes sense for the long-term financial health of the Debtor.[13] Such an appointment is in the best interests of the creditors and this estate.

As to the other alternatives, the Court must articulate "unusual circumstances," as shown by the non-moving party, to prevent dismissal or conversion of the case. Given the phrasing of Section 1112(b)(1), those unusual circumstances may not be what is encountered by the typical debtor operating in a Chapter 11 proceeding. In re Fisher, 2008 WL 1775123 (Bankr. D. Montana 2008); 7 Collier on Bankruptcy, ¶ 1112.04[3], p. 1112-26, 1112-27 (15thed.rev.). The owners disagree, from a short-term and strategic long-term stand-point, as to how the Debtor's operations should be conducted. Coupled with the Debtor's profitable operations, the improper pre-petition transfers of the Twentiers, and the non-payment of a substantial liability to

---

**13.** *See* <u>Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership</u>, 526 U.S. 434, 119 S.Ct. 1411 (1999).

13

the IRS, the Court is presented with an unusual situation wherein the Debtor should be allowed to operate to maximize the payment to all creditors, but the Debtor needs to be under the control of the Court to make certain that the improper transfers are returned to the estate, in an orderly manner, to be redistributed to all creditors, and the dispute between the owners is minimized to the greatest extent possible to ensure that a confirmable plan may be proposed within a reasonable period of time. If the case is dismissed, there is no guarantee that the Twentiers' abuses will be resolved in favor of the creditors, and the owners will continue to fight, dissipating the assets of the Debtor. If the case is converted, the Debtor's viable operations will be destroyed, with the Debtor's assets to be liquidated. Thus, even though unusual circumstances may, in fact, be present in this case, which would dictate that the case be neither dismissed nor converted, the preservation of the status quo, allowing Ferring to somehow propose a plan at a later date, but with the owners continuing in their incessant fighting, is untenable. Ultimately what is in the best interests of creditors and the estate is to appoint a Chapter 11 trustee.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Debtor's Motion to Dismiss is DENIED. The Ferring Cross Motion requesting the appointment of a Chapter 11 trustee is GRANTED.

DATED this 2nd day of September, 2008.

*[signature]*
Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge